1
2
3
4
5
6
7
8                      UNITED STATES DISTRICT COURT

9                     SOUTHERN DISTRICT OF CALIFORNIA

10

11  BRUCE J. STANIFORTH, as an              Case No.:  14-cv-1899-GPC-JLB
    individual and as beneficiary of the Bruce
12  J. Staniforth IRA,                       **JUDGMENT AND ORDER**
                                             **GRANTING PLAINTIFF'S MOTION**
13                            Plaintiff,     **FOR DEFAULT JUDGMENT**

14  v.                                       **[ECF No. 102]**

15  TOTAL WEALTH MANAGEMENT,
16  INC., a California Corporation; ALTUS
    CAPITAL MANAGEMENT, LLC, a
17  Delaware limited liability company;
18  ALTUS CAPITAL OPPORTUNITY
    FUND LP, a Delaware limited partnership;
19  JACOB K. COOPER, an individual;
20  NATHAN MCNAMEE, an individual;
    DAVID SHOEMAKER, an individual;
21  CAPITA ADVISORS, INC., a California
22  corporation; FINANCIAL COUNCIL,
    INC., a California corporation;
23  PINNACLE WEALTH GROUP, INC., a
24  California corporation; and DOES 1
    through 100, inclusive,
25
26                            Defendants.

27
                                    1
28                                                      14-cv-1899-GPC-JLB

Plaintiff Bruce J. Staniforth filed an Application for Entry of Default Judgment as to Defendants Total Wealth Management, Inc.; Altus Capital Management, LLC; Altus Capital Opportunity Fund, L.P.; Jacob K. Cooper; Capita Advisors, Inc.; Financial Council, Inc.; and Pinnacle Wealth Group, Inc.  ECF No. 102.  No response was filed.  Pursuant to Civil Local Rule 7.1.d, the Court finds the matter appropriate for decision on the papers and hereby VACATES the hearing previously scheduled for June 2, 2023.  Based on the reasoning below, the Court GRANTS Plaintiff Staniforth's motion for default judgment and GRANTS his request for rescission, pre-judgment interest, and attorneys' fees.

## I.   PROCEDURAL BACKGROUND

In August 2014, Staniforth filed a Complaint against Defendants Total Wealth Management, Inc.; Altus Capital Management, LLC ("AC Management"); Altus Capital Opportunity Fund, LP ("AC Fund"); Jacob K. Cooper; Nathan McNamee; David Shoemaker; Capita Advisors, Inc.; Financial Council, Inc.; and Pinnacle Wealth Group, Inc.  ECF No. 1.

The Complaint alleges that Staniforth invested the bulk of his retirement funds with Total Wealth, an investment advisory firm, and Cooper, Total Wealth's Chief Executive Officer and owner.  Compl. ¶¶ 4–5, 15.  Cooper and Total Wealth purportedly sold Staniforth certain limited partnership interests in AC Fund, a "pooled investment vehicle" or "private fund" managed by Cooper, Total Wealth, and AC Management.  Compl. ¶¶ 8–9, 16.  Staniforth alleges that the Defendants paid revenue sharing fees to Cooper, McNamee,[1] and Shoemaker.[2]  Compl. ¶ 53(f).  Pinnacle Wealth, Capita Advisors, and

---

[1] McNamee was allegedly Total Wealth's President and Chief Compliance Officer.  Compl. ¶ 6.

[2] Shoemaker was allegedly Total Wealth's Co-Founder and Chief Compliance Officer.  Compl. ¶ 7.

Financial Council allegedly "received in their bank accounts the revenue sharing paid to their respective owners," Cooper, McNamee, and Shoemaker.  Compl. ¶¶ 10–12, 53(f).

Staniforth alleges that the Defendants made a number of false misrepresentations to Staniforth in connection with his decision to invest his retirement funds with them, and failed to disclose material facts to Staniforth in conjunction with his purchase of securities. Compl. ¶¶ 53–57, 63–64, 84–85.

In October 2014, Staniforth obtained an entry of default against all defendants.  ECF Nos. 13, 16.  He then filed an application for an entry of default judgment against all defendants.  ECF No. 17.  Four defendants—Total Wealth, AC Management, AC Fund, and Cooper—appeared and filed a joint motion to set aside entry of default.  ECF No. 21. In November, the Court granted the motion to set aside default as to the four defendants, ECF No. 22, and denied the application for default judgment as to the remaining defendants without prejudice, ECF No. 23.  The Court reasoned that because some defendants had appeared and Staniforth's claims against all defendants were based on the same nucleus of operative facts, "there [was a] significant risk of incongruous or inconsistent judgments if the Court were to grant a default judgment against the [remaining defendants], but the other Appearing Defendants were to potentially later prevail on the merits."  ECF No. 23 at 4. In January 2015, The Court set aside the entry of default as to Defendants Shoemaker and Financial Council, ECF No. 28, and in March 2023 the Clerk again entered default against Financial Council, ECF No. 103.

Defendants AC Management, AC Fund, Cooper, and Total Wealth, represented by counsel, answered the Complaint in November 2014.  ECF No. 24.  In February 2022, the Court struck this answer from the record because these four defendants failed to participate in the action.  ECF No. 71.  In February 2022, the Clerk again entered default against these four defendants.  ECF No. 72.

14-cv-1899-GPC-JLB

The action was stayed from May 2015 until December 2021 during the appointment of a receiver in the related case, *SEC v. Total Wealth Management, Inc., et al.*, Case No. 15-cv-226-BAS-DHB.  *See* ECF Nos. 43, 59.

Defendants Shoemaker and McNamee were dismissed from this case with prejudice after reaching a settlement agreement.  ECF Nos. 97, 98.

Staniforth now moves for an entry of default judgment as to the remaining defendants:  Total Wealth, AC Management, AC Fund, Cooper, Capita Advisors, Financial Council, and Pinnacle Wealth ("Defaulting Defendants").  ECF No. 102.  He seeks judgment "for principal in the amount of $691,957.00, prejudgment interest in the amount of $615,216.12, and attorneys' fees in the amount of $16,896.44, for a total judgment in the amount of $1,324,069.56."  *Id.* at 2.  Staniforth's counsel certifies that he served the application for default judgment on counsel of record "as listed in the Court's CM/ECF system via CM/ECF on March 22, 2023."  ECF No. 102-4.  To date, none of the Defaulting Defendants have opposed the motion for entry of default judgment.  *See* Fed. R. Civ. P. 55(b)(2) ("If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing.").

The Court finds the matter suitable for decision on the papers, without oral argument, pursuant to Civil Local Rule 7.1(d)(1).

## II.   LEGAL STANDARDS

Federal Rule of Civil Procedure 55 provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend . . . . the clerk must enter the party's default."  Fed. R. Civ. P. 55(a).  Here, Staniforth has filed requests for entry of default and defaults were entered.  ECF Nos. 13, 64, 72, 103.  Pursuant to Rule 55(b), Staniforth filed a motion for default judgment.  ECF No. 102.

The decision to grant or deny default judgment is within the discretion of the district court. *Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986). "[D]efault judgments are ordinarily disfavored." *Id.* at 1471. The Ninth Circuit has enumerated seven factors for courts to consider "in exercising discretion as to the entry of default judgment:"

> (1) the possibility of prejudice to the plaintiff,
> (2) the merits of the plaintiff's substantive claim,
> (3) the sufficiency of the complaint,
> (4) the sum of money at stake in the action,
> (5) the possibility of a dispute concerning material facts,
> (6) whether the default was due to excusable neglect, and
> (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Id.* at 1471–72. Upon default, the factual allegations in the complaint are taken as true, except those related to the amount of damages. *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977); *see* Fed. R. Civ. P. 8(b)(6). Allegations of damages must be proven. *Id.* "The plaintiff is required to provide evidence of its damages, and the damages sought must not be different in kind or amount from those set forth in the complaint." *Amini Innov'n Corp. v. KTY Int'l Mktg.*, 768 F. Supp. 2d 1049, 1054 (C.D. Cal. 2011). "In determining damages, a court can rely on the declarations submitted by the plaintiff or order a full evidentiary hearing." *Philip Morris USA Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 498 (C.D. Cal. 2003). "[A] default judgment for money may not be entered without a hearing unless the amount claimed is a liquidated sum or capable of mathematical calculation." *Davis v. Fendler*, 650 F.2d 1154, 1161 (9th Cir. 1981).

## III.    DISCUSSION

### A.    Entry Of Judgment Is Proper Under The *Eitel* Factors

As a preliminary matter, Staniforth's counsel, Oleg Cross, alleges in a declaration attached to the application for default judgment that to the best of his knowledge, "none of the Defendants are minors or incompetent persons, nor are any of them in the military service nor subject to the Soldiers and Sailors Relief Act of 1940." ECF No. 102-2 at 2.

### 1.    Factor 1:  The possibility of prejudice to the plaintiff

The first *Eitel* factor favors entry of judgment because Staniforth will otherwise be prejudiced.  Without an entry of default judgment Staniforth—who was 71 years old at the time of filing his complaint in August 2014, Compl. ¶ 15—will not have any other meaningful recourse for recovery against the Defaulting Defendants.  *See Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 499 (C.D. Cal. 2003) ("Plaintiff would suffer prejudice if the default judgment is not entered because Plaintiff would be without other recourse for recovery."). Because the Defaulting Defendants have effectively admitted the truth of Staniforth's averments by virtue of their default, the evidence before the Court establishes that Staniforth will likely suffer great prejudice if he is unable to recoup his financial losses and recover attorneys' fees for the years of litigation.

### 2.    Factors 2 and 3:  The substantive merits and sufficiency of the complaint

The second and third *Eitel* factors favor entry of judgment because Staniforth's claims are both meritorious and sufficiently pled.  *See PepsiCo, Inc. v. California Sec. Cans*, 238 F. Supp. 2d 1172, 1175 (C.D. Cal. 2002) ("The Ninth Circuit has suggested that these two factors require that a plaintiff 'state a claim on which the [plaintiff] may recover' " (alteration in original) (quoting *Kloepping v. Fireman's Fund*, No. C 94-2684 TEH, 1996 WL 75314, at *2 (9th Cir. Feb. 13, 1996))).  Staniforth alleges sixteen claims for violations of federal and California securities laws, common-law claims, violations of the California Business and Professions Code, and financial elder abuse.

#### a.    Pleading standards for each cause of action

To prevail on his first claim against Cooper, Total Wealth, and AC Management for violations of Sections 5 and 12(a)(1) of the Securities Act, 15 U.S.C. §§ 77e, 77l(a)(1), Compl. ¶¶116–23, concerning prohibitions relating to interstate commerce and the mails,

14-cv-1899-GPC-JLB

Staniforth must prove by a preponderance of the evidence that (1) "[t]he security[3] was sold through a prospectus or oral communication using the instrumentalities of interstate commerce"; (2) Cooper, Total Wealth, AC Management, and AC Fund "sold, offered to sell, or solicited the sale of the security to" Staniforth; (3) "[t]he sale occurred by means of a prospectus or oral communication misstating a material fact or omitted a material fact that was necessary to keep the statements that were made from being misleading; and" (4) Staniforth "suffered damages as a result of the misrepresentation or omission."  3B Fed. Jury Prac. & Instr. § 162:130 (6th ed.); *see also* 15 U.S.C. §§ 77e, 77l(a)(1).

To prevail on his second claim against Total Wealth, AC Management, and Cooper for violations of Section 15(a) of the Securities Act, 15 U.S.C. § 77o(a), Compl. ¶¶ 124–27, concerning liability of controlling persons, Staniforth must prove by a preponderance of the evidence that "(1) there is a primary violation of the Securities Act; and (2) the defendant[s] directly or indirectly controlled the person or entity liable for the primary violation."  *Pino v. Cardone Cap., LLC*, 55 F.4th 1253, 1257 (9th Cir. 2022); *see* 15 U.S.C. § 77o(a).

Staniforth's third claim against Total Wealth and AC Management alleges a violation of Section 29(b) of the Securities Exchange Act, 15 U.S.C. § 78cc(b), Compl.

---

[3] 15 U.S.C. § 77b(a)(1) defines "security" broadly to mean:

> any note, stock, treasury stock, security future, security-based swap, bond, debenture, evidence of indebtedness, certificate of interest or participation in any profit-sharing agreement, collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, voting-trust certificate, certificate of deposit for a security, . . . , or, in general, any interest or instrument commonly known as a "security", or any certificate of interest or participation in, temporary or interim certificate for, receipt for, guarantee of, or warrant or right to subscribe to or purchase, any of the foregoing.

7

¶¶ 128–136, concerning validity of contracts. "Section 29(b) renders voidable '[e]very contract made in violation of any provision of [the securities laws] or of any rule or regulation thereunder, and every contract . . . the performance of which involves [such a] violation." *Facebook, Inc. v. Pac. Nw. Software, Inc.*, 640 F.3d 1034, 1039 (9th Cir. 2011) (alteration in original) (quoting 15 U.S.C. § 78cc(b)). Staniforth alleges that Total Wealth, AC Management, and AC Fund "violated the general antifraud provisions of Section 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j(b) and SEC Rule 10b-5(a) & (c), 17 C.F.R. § 240.10b-5(a) & (c) promulgated there under." Compl. ¶ 131. "Rule 10b-5 prohibits fraud, whether by commission or omission, 'in connection with the purchase or sale of any security.' " *Facebook*, 640 F.3d at 1038 (quoting 17 C.F.R. § 240.10b-5). A violation of Rule 10b-5 entitles the non-defaulting party to rescission.[4] *Id.* at 1039. To prevail on a claim for violation of Section 10(b) and Rule 10b-5, Staniforth must prove by a preponderance of the evidence that Total Wealth, AC Management, and AC Fund: (1) "used an instrumentality of interstate commerce, or a facility of a national securities exchange, in connection with the sale or purchase of securities"; (2) in connection with the sale or purchase of the securities, either (a) "employed a device, scheme, or artifice to defraud," (b) "made any untrue statement of a material fact, or omitted to state a material fact necessary in order to make the statements that were made, in light of the circumstances under which they were made, not misleading, or" (c) "engaged in an act, practice or course of business that operated as a fraud or deceit upon any person in connection with" the purchase or sale of a security; and (3) acted knowingly. 3B Fed. Jury Prac. & Instr.

---

[4] Rescission is "[a] party's unilateral unmaking of a contract for a legally sufficient reason, such as the other party's material breach, or a judgment rescinding the contract, . . . and is [generally] accompanied by restitution of any partial performance, thus restoring the parties to their precontractual positions." *Rescission*, Black's Law Dictionary (11th ed. 2019).

14-cv-1899-GPC-JLB

§ 162:230 (6th ed.).   Staniforth must also prove that (4) he "justifiably relied upon the defendant[s'] conduct" and (5) "suffered damages as a result of defendant[s'] conduct." *Id.*

Staniforth pleads in the alternative for rescission because Total Wealth and AC Management "violated Section 15(a) of the Securities Exchange Act, 15 U.S.C. § 78o, which prohibits transactions by unregistered securities brokers and dealers." Compl. ¶ 133. "The Exchange Act defines a 'broker' as 'any person engaged in the business of effecting transactions in securities for the account of others.' " *U.S. SEC. v. Murphy*, 50 F.4th 832, (9th Cir. 2022) (quoting 15 U.S.C. § 78c(a)(4)(A)).

To prevail on his fourth claim against Total Wealth, AC Management, and Cooper for violations of Section 20(a) of the Securities Exchange Act, 15 U.S.C. § 78t(a), Compl. ¶¶ 137–40, concerning liability of controlling persons and persons who aid and abet violations, Staniforth must prove that the defendants "exercised actual power or control over the primary violator" of federal securities law. *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 990 (9th Cir. 2009).

Staniforth's fifth claim against AC Fund alleges violations of Section 47(b) of the Investment Company Act, 15 U.S.C. § 80a-46(b), Compl. ¶¶ 141–54, concerning validity of contracts.   In 2018 the Ninth Circuit explained that "section 47(b) does not establish a private right of action." *UFCW Local 1500 Pension Fund v. Mayer*, 895 F.3d 695, 700 (9th Cir. 2019).   Therefore, Staniforth cannot recover under this claim.

Staniforth's sixth claim against AC Fund, Total Wealth, and AC Management alleges a violation of Section 215(b) of the Investment Advisers Act, 15 U.S.C. § 80b-15(b), concerning validity of contract.   Section 215(b) creates an implied private cause of action for rescission of a contract made in violation of the Investment Advisers Act.   *Transamerica Mortg. Advisors, Inc. (TAMA) v. Lewis*, 444 U.S. 11, 19 (1979); *see* 15 U.S.C. § 80b-15(b).   Staniforth alleges that the Altus Fund Limited Partnership Agreement

should be rescinded because "Altus Capital and Total Wealth violated the general antifraud provisions of Section 206(4) of the Investment Advisers Act, 15 U.S.C. § 80b-6 and SEC Rules 206(4)-1 and 206(4)-8, 17 C.F.R. §§ 275.206(4)-1 & 275.206(4)-8." Compl. ¶ 159. Section 206(4) prohibits investment advisors[5] from "engag[ing] in any act, practice, or course of business which is fraudulent, deceptive, or manipulative." *SEC v. Steadman*, 967 F.2d 636, 647 (D.C. Cir. 1992) (alterations and emphasis in original). Section 206(4) requires only a showing of negligent intent. *ZPR Investment Mgmt. Inc. v. SEC*, 861 F.3d 1239, 1247 (11th Cir. 2017).

To prevail on his seventh claim against Total Wealth, AC Management, and AC Fund for violations of California Corporations Code § 25110, Compl. ¶¶ 164–73, Staniforth must prove that these defendants sold or offered to sell securities that were subject to qualification; not exempt from qualification; and were not qualified under Section 25111, 25112, or 25113. If these elements are met, Section 25503 imposes civil liability against the violating defendants and Staniforth may recover the consideration he paid for that security plus interest, reasonable attorneys' fees, and in certain situations, damages. *See also Stewart v. Ragland*, 934 F.2d 1033, 1040 (9th Cir. 1991).

To prevail on his eighth claim against Total Wealth, AC Management, Cooper, and AC Fund for violations of California Corporations Code § 25401, Compl. ¶¶ 174–81, Staniforth must prove that these defendants offered to buy or sell a security in the state of California "by means of any written or oral communication that include[d] an untrue

---

[5] "Investment adviser" is defined as "any person who, for compensation, engages in the business of advising others, either directly or through publications or writings, as to the value of securities or as to the advisability of investing in, purchasing, or selling securities, or who, for compensation and as part of a regular business, issues or promulgates analyses or reports concerning securities." 15 U.S.C. § 80b-2(a)(11).

statement of material fact or omit[ted] to state a material fact necessary to make the statements made, in the light of the circumstances under which the statements were made, not misleading."  Section 25501 then entitles Staniforth to "rescission or . . . damages (if the plaintiff or the defendant, as the case may be, no longer owns the security)."  *Cf. Shawmut Bank, N.A. v. Kress Assocs.*, 33 F.3d 1477, 1489 (9th Cir. 1994).

To prevail on his ninth claim against Cooper, Pinnacle, Total Wealth, and AC Management for violations of California Corporations Code § 25400(d), Compl. ¶¶ 182–86, Staniforth must prove that the defendants, as buyers or sellers of a security, made "false or misleading statements of material facts for the purpose of inducing a purchase or sale." *Irving Firemen's Relief & Ret. Fund v. Uber Techs., Inc.*, 998 F.3d 397, 405 (9th Cir. 2021) (quoting *Overstock.com, Inc. v. Goldman Sachs & Co.*, 231 Cal. App. 4th 513, 530 (2014)). Section 25500 creates a private right of action for violations of Section 25400 whereby the plaintiff must allege that they "purchased or sold a security 'at a price which was affected' by the violation," and are thus entitled to damages constituting the difference between the purchase price and true market value, plus interest. *Id.* (quoting Cal. Corp. Code § 25500).

To prevail on his tenth claim against Total Wealth and AC Management for violations of California Corporations Code § 25501.5, Compl. ¶¶ 187–92, Staniforth must prove that he purchased or sold a security from the defendants; that the defendants were "broker-dealers that [were] required to be licensed and ha[d] not, at the time of the sale or purchase," obtained proper licenses.  *See also Jackson v. Fisher*, 931 F. Supp. 2d 1049, 1065 (N.D. Cal. 2013).  Under Section 25501.5, Staniforth would be entitled to rescission plus interest or damages.

Staniforth may hold defendants Cooper, Pinnacle, Capita Advisors, Financial Council, Total Wealth, and AC Management jointly and severally liable in his eleventh claim under California Corporations Code § 25504, Compl. ¶¶ 193-97, if he proves that they either (1) had direct or indirect control of a person liable under Section 25501 or

1  25503, or (2) were a "partner in a firm, . . . principal executive officer or director of a
2  corporation . . . , person occupying a similar status or performing similar functions, . . .
3  employee of a person . . . , [or] broker-dealer or agent who materially aid[ed] in the act or
4  transaction constituting the violation" under Section 25501 or 25503.  *See also People v.*
5  *Koenig*, 58 Cal. App. 5th 771, 803–04 (2020).

### b.   Sufficiency of the Complaint

7      Staniforth's Complaint properly alleges the necessary elements for its first through
8  fourth and sixth through eleventh causes of action.[6]  He has alleged that "Total Wealth is
9  an investment advisory firm registered with the Securities and Exchange Commission
10  ("SEC")" that was the managing member of AC Management and that both were
11  investment advisers to AC Fund; that Cooper held himself out as a Certified Financial
12  Planner; that Capita Advisors, Financial Council, and Pinnacle Wealth never registered
13  with the SEC and were alter egos to McNamee, Shoemaker, and Cooper, respectively.
14  Compl. ¶¶ 4–12, 51, 158–61.  He alleges that Defendants were required to be, but were
15  not, registered broker-dealers with the SEC or with California state regulators"; and that
16  within California they purported to sell him " 'securities' within the meaning of Section
17  2(a)(1) of the Securities Act" which "were not registered with the SEC." Compl. ¶¶ 19–25,
18  82–83.

19      The Complaint details Cooper's, Total Wealth's, and AC Fund's radio advertising
20  and solicitation practices for the sale of securities—including the very securities in which
21  Staniforth contracted to purchase interests after listening to their radio broadcasts. Compl.
22  ¶¶ 27–44, 48–50.  It describes the deceptive representations and omissions that Cooper and

---

[6] Although Staniforth raised an additional five causes of action in his Complaint, the Court need not address them because, as discussed next, Staniforth is entitled to his requested relief based on his first through fourth and sixth through eleventh causes of action.

Total Wealth made to Staniforth—in coordination with AC Fund, McNamee, Shoemaker, Capita, Pinnacle Wealth, and Financial Council—which induced Staniforth to justifiably agree to purchase securities with them.  Compl. ¶¶ 48–64, 84–85.  The securities were purportedly "subject to qualification, were not exempt from qualification, and were not . . . qualified as any kind of securities transaction with the California Commissioner of Corporations." Compl. ¶ 168.  It alleges that Defendants' operated a fraudulent scheme to effect "unlawful public offering and distribution of securities"; details that scheme; and alleges that "Cooper, Total Wealth, and [AC] Fund acted with the intent to defraud or with reckless disregard for the truth, in deceiving [Staniforth], federal and state regulators, and the public at large."  Compl. ¶¶ 65–81.

The Complaint also sufficiently alleges that liability should attach to all defendants under the alter-ego theory, Compl. ¶¶ 86–115, aiding and abetting, Compl. ¶¶ 53, 62, and/or as controlling persons, Compl. ¶¶ 87–88, 97–98, 107–108, 126–27, 139–40, 196.  It further alleges that Staniforth suffered "damages equal to the difference between the price he paid for the[] securities, and the amount he would have paid in the absence of" Defendants acts. Compl. ¶¶ 185, 14, 234.

Because the Defaulting Defendants' have failed to answer or otherwise defend against Staniforth's allegations, these factual allegations from the Complaint are accepted as true.  *See* Fed. R. Civ. P. 8(b)(6); *Geddes*, 559 F.2d at 560.  Accordingly, the second and third *Eitel* factors favor entry of default judgment against the Defaulting Defendants.

### 3.   Factor 4:  The sum of money at stake

The fourth *Eitel* factor asks the court to consider whether the "sum of money at stake in the action" favors entry of default judgment.  *Eitel*, 782 F.2d at 1471; *see also PepsiCo*, 238 F. Supp. 2d at 1176 ("[T]he court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct.").  This factor favors default judgment because as discussed in Section III.A.2, *supra*, Staniforth has sufficiently raised multiple

13

causes of action that would entitle him at least to rescission and the Complaint alleges that, at the time of filing in 2014, Staniforth had invested a substantial sum of money—a principal in excess of $900,000—with AC Fund.  Compl. ¶¶ 9, 14, 233.  As of March 2023, Staniforth alleges that he has lost nearly $700,000 in principal and is also entitled to recover more than $600,000 in interest and roughly $17,000 in attorneys' fees.  ECF No. 102-1 at 2–3; ECF No. 102-2 at 2–6; ECF No. 102-3 at 3–6.  Although Staniforth might reasonably be entitled to treble and punitive damages, *see* Compl. ¶¶ 191, 235, his request for only rescission damages, interest, and attorneys' fees makes the sum of money at stake particularly reasonable, especially when viewed in light of Defendants' comprehensive and willful scheme to defraud Staniforth and others in violation of state and federal securities laws.  *Cf. Philip Morris*, 219 F.R.D. at 500 (concluding $2,000,000 recovery in statutory damages favored default judgment given Defendant's willful violations).

### 4.    Factor 5:  The possibility of dispute concerning material facts

Upon default, all factual allegations in the complaint are taken as true, except those related to the amount of damages.  *Geddes*, 559 F.2d at 560.  Staniforth has filed a well-pleaded Complaint that explains in extraordinary detail the facts and laws that give rise to his many causes of action.   The Clerk has entered default against the Defaulting Defendants.  *See* ECF No. 64, 72, 103.  Thus, there is no dispute as to any material fact in the complaint "and the likelihood that any genuine issue may exist is, at best, remote."  *See Philip Morris*, 219 F.R.D. at 500; *accord PepsiCo*, 238 F. Supp. 2d at 1177.  The fifth *Eitel* factor favors the entry of default judgment.

### 5.    Factor 6:  Whether default was due to excusable neglect

The sixth *Eitel* factor considers whether the defendants may have defaulted due to excusable neglect.  Due process does not require actual notice but "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Jones v. Flowers*, 547

U.S. 220, 226 (2006) (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950)).  The Defaulting Defendants all received notice of the Complaint.  ECF Nos. 4–7, 8–11.  Defendants Capita Advisors, Financial Council, and Pinnacle Wealth never answered the Complaint, but Defendants AC Management, AC Fund, Cooper, and Total Wealth answered the Complaint and are purportedly represented by counsel, ECF No. 24, though their answer was stricken from the record when they failed to participate in the action, ECF No. 71.  Defendants AC Management, AC Fund, Cooper, and Total Wealth all received notice of Staniforth's motion for default judgment, ECF No. 102-4, and were given multiple opportunities to respond, *see* ECF No. 104 (March 2023 Briefing Schedule); ECF No. 105 (April 2023 Order for Supplemental Briefing and inviting Defendants to respond).  The Defaulting Defendants did not respond.  The burden was on Defendants' counsel, upon entering a notice of appearance on behalf of Defendants AC Management, AC Fund, Cooper, and Total Wealth, to update their contact information through the PACER website and file a timely notification of any changes to that contact information. *See* United States District Court for the Southern District of California, Electronic Case Filing Administrative Policies and Procedures Manual, Section 1.f.  (March 14, 2023).[7]

Because all Defaulting Defendants received notice of the Complaint; Defendants AC Management, AC Fund, Cooper, and Total Wealth, have answered the Complaint with the assistance of counsel who appears to still be representing them; and nearly a decade has elapsed, the possibility of excusable neglect is remote.  *Cf. Philip Morris*, 219 F.R.D. at 500–01; *PepsiCo*, 238 F. Supp. 2d at 1177.  This factor weighs in favor of default judgment.

---

[7]  Available at https://www.casd.uscourts.gov/_assets/pdf/cmecf/Electronic%20Case%20Filing%20Procedures%20Manual.pdf (last visited May 24, 2023).

14-cv-1899-GPC-JLB

### 6.   Factor 7:  Policy for deciding on the merits

"[T]he mere existence of Fed. R. Civ. P. 55(b) indicates that the seventh *Eitel* factor is not alone dispositive." *Philip Morris*, 219 F.R.D. at 501; *accord PepsiCo*, 238 F. Supp. 2d at 1177.  The Defaulting Defendants' failure to defend the action beyond March 2015, *see* ECF No. 42 (order granting Cooper's motion to substitute attorney), makes a decision on the merits impractical, if not impossible.  Thus, the seventh *Eitel* factor does not preclude the Court from entering default judgment against the Defaulting Defendants.  *Cf. Philip Morris*, 219 F.R.D. at 501; *PepsiCo*, 238 F. Supp. 2d at 1177.

### B.   Remedies

The Court finds that Staniforth has provided sufficient evidence of his damages and that his damages can be calculated with reasonable accuracy without an evidentiary hearing.

### 1.   Rescission

As discussed in Section III.A.2, *supra*, Staniforth is entitled to rescission and should be returned, as close as possible, to his precontractual position.  Staniforth has provided a detailed accounting of the principal payments he made to Defendants, income he received from various funds, and total profits and losses as of February 2023.  ECF No. 102-2 at 2–3, 5–6; ECF No. 102-3 3–6.  In Staniforth's Individual Account with Defendants, he invested a principal amount of $1,158,585.26 and received $813,835.84 in withdrawals.  ECF No. 102-3 at 3, 5.  Excluding losses/profits from a settlement he received specific to a particular fund within this account, Staniforth is still owed $244,749.42[8] in principal for

---

[8] There appears to be a minor typo in Staniforth's spreadsheet for his Individual Account. *See* ECF No. 102-3 at 5.  The numbers in the "amount owing" column add up to $244,749.42, not $244,749.44 as reported.  *See id.* ($636.85 + $17,984.37 − $246.08 + $1,005.86 + $18,585.26 + $254.80 + $270.78 + $435.56 + $7,501.98 − $1,679.96 + $200,000.00 = $244,749.42).

1   this account.  *Id.*  In his IRA Account with Defendants, he invested a principal amount of

2   $669,875.37 and received $123,283.75.  *Id.*  Excluding losses/profits from a settlement he

3   received specific to a particular fund within this account, Staniforth is still owed

4   <u>$446,592.62</u> in principal for this account.  In his ROTH Account with Defendants, he

5   invested a principal amount of $48,861.70 and received $48,245.76[9] in withdrawals.  *Id.* at

6   4–5.  He is still owed <u>$615.94</u> in principal for this account.  *Id.*  Between these three

7   accounts, Staniforth is still owed a total of **<u>$691,957.98</u>** in principal.

8                    **2.   Prejudgment interest**

9        As discussed in Section III.A.2, *supra*, Staniforth has alleged multiple causes of

10  action that would entitle him to prejudgment interest.  The Court finds that, given the

11  substantial sum of money at issue and long duration of the proceedings, prejudgment

12  interest is necessary to help make Staniforth whole.  *See Donell v. Kowell*, 533 F.3d 762,

13  772 (9th Cir. 2008) ("[P]rejudgment interest should not be thought of as a windfall in any

14  event; it is simply an ingredient of full compensation that corrects judgments for the time

15  value of money." (quoting *In re P.A. Bergner & Co.*, 140 F.3d 1111, 1123 (7th Cir. 1998))).

16  One of the causes of action under which Staniforth is entitled to recover, California

17  Corporations Code Section 25501.5(a)(2), instructs that "[u]pon rescission and tender of

18  the security, a purchaser may recover the consideration paid for the security plus interest

19  at the legal rate."  Article XV, section 1 of the California Constitution provides that "[i]n

20  the absence of the setting of [a rate of interest upon a judgment rendered in any court of

21

22

---

23  [9] There appears to be a minor typo in Staniforth's declaration in which he alleges having

24  received $48,245.7<u>8</u> in withdrawals for this account, ECF No. 102-3 at 4, rather than

25  $48,245.7<u>6</u> as noted in the spreadsheet, *id.* at 5.  The Court proceeds under the assumption

26  that $48,245.76 is the correct value because the math in his declaration works out if this is

27  the correct value.  *See id.* at 4 ($48,861.70 (deposits) – $48,245.76 (withdrawals) =

28  $615.94).

this state] by the Legislature, the rate of interest on any judgment rendered in any court of the state shall be 7 percent per annum." The Court finds that this rate is appropriate for prejudgment interest because the Defaulting Defendants have purportedly engaged in fraud. *See In re Ekrem*, 192 B.R. 982, 997–98 (C.D. Cal. 1996) ("Because this is a case in which a dishonest debtor engaged in fraud, the equities justify the application of a rate other than the federal rate. [Defendant] should not be rewarded with the lower federal rate because this case was litigated in a federal bankruptcy court. This Court will grant prejudgment interest at the California legal rate of 7% per annum."); *Garrison v. Ringgold*, No. 19-cv-0244, 2020 WL 13189480, at *7 (S.D. Cal. Nov. 9, 2020).

Using the start dates provided in the Declaration of Oleg Cross who alleges that he performed the interest calculations, Staniforth made his original investment in his Individual Account on June 4, 2010; in his IRA Account on June 10, 2010; and in his ROTH Account on June 29, 2010. ECF No. 102-2 at 2–3. Using the date of this Order— June 2, 2023—as the end date, *see id.* (using roughly the date of the declaration as the end date), the Court finds that 4,746; 4,740; and 4,721 days have passed for each account, respectively. The simple interest[10] owed is: <u>$222,767.96</u> on the Individual Account; <u>$405,969.30</u> on the IRA Account; and <u>$557.67</u> on the ROTH Account. Between the three accounts, Staniforth is owed a total of **<u>$629,294.93</u>** in interest on the principal.

### 3.   Attorneys' fees

Staniforth has also requested $16,896.44 in attorneys' fees and costs. ECF No. 102 at 9–10. He has provided a declaration from an attorney hired on a flat fee of $5,000

---

[10] Simple interest is the "[i]nterest paid on the principal only and not on accumulated interest." *Interest*, Black's Law Dictionary (11th ed. 2019). To calculate simple interest, the Court used the following formula:

Principal × (0.07 interest ÷ 365 days/year) × Number of Days.

14-cv-1899-GPC-JLB

attesting to the reasonable and necessary legal services he provided. ECF No. 102-1 at 2–3. Staniforth's counsel also attached a declaration attesting to the 39.6 hours of legal work that he and a contract attorney performed for Staniforth at a discounted rate ranging from $300 to $350 per hour for primary counsel and at $150 per hour for the contract attorney; amounting to $11,896.44. ECF No. 102-2 at 3–4. Attorneys' fees are recoverable under California Corporations Code Sections 25501.5(b) and 25503. The Court finds that an award of attorneys' fees and costs is appropriate in this case to help make Staniforth whole.

Altogether, Staniforth's legal fees and costs, which the Court concludes were reasonable and necessary, amounted to **$16,896.44**.

### 4.     Other Distributions

Staniforth has "received a total of $17,422.72 in distributions from the Court Appointed Receiver, . . . through the Receivership Estate in *SEC v. Total Wealth Management, Inc.*, Case No. 15-cv-00226-BAS-MSB," ECF No. 102-3 at 4, and he reasonably expects to receive $34,861.13 in settlement payments from Defendants McNamee and Shoemaker over the course of his lifetime, ECF No. 106 at 2–3. Under California law, when a plaintiff has reached a settlement with some but not all their debtors, the Court may reduce, by the settlement amount, the rescission award that a plaintiff may recover from the nonsettling, joint and several obligors. Cal. Civ. Code § 1543; *see McCall v. Four Star Music Co.*, 51 Cal. App. 4th 1394, 1399 (1996).[11] Absent any indication that

---

[11] California Code of Civil Procedure section 877 is similarly applicable in the case of joint and several tortfeasors. *See Leung v. Verdugo Hills Hosp.*, 55 Cal. 4th 291, 301–02 (2012) ("The statute modified the common law release rule by providing that a 'good faith' settlement and release of one joint tortfeasor, rather than completely releasing other joint tortfeasors, merely reduces, by the settlement amount, the damages that the plaintiff may recover from the nonsettling joint tortfeasors, and that such a good faith settlement and release discharges the settling tortfeasor from all liability to others." (quoting Cal. Code Civ. P. § 877)).

Staniforth's settlement agreements with McNamee and Shoemaker were made in bad faith, the Court accordingly reduces Staniforth's recovery upon default judgment by **$52,283.85**.

## IV. SUMMARY OF JUDGMENT

| | | |
|---|---|---|
| 1. Judgment Creditors | Bruce J. Staniforth | |
| 2. Judgment Debtors | Total Wealth Management, Inc.; Altus Capital Management, LLC; Altus Capital Opportunity Fund LP; Jacob K. Cooper; Capita Advisors, Inc; Financial Council, Inc.; and Pinnacle Wealth Group, Inc. | |
| 3. Principal Judgment | | $691,957.98 |
| 4. Prejudgment Interest | | $629,294.93 |
| 5. Attorneys' Fees and Costs | | $16,896.44 |
| 6. Other Distributions | | ($52,283.85) |
| 7. Total | | $1,285,865.50 |

## V. CONCLUSION

For the reasons explained above, Plaintiff Bruce J. Staniforth's motion for default judgment, ECF No. 102, is hereby GRANTED. It is ORDERED that Staniforth is awarded default judgment against the Defaulting Defendants, who are jointly and severally liable for, the principal amount of $691,957.98, prejudgment interest in the amount of $629,294.93, attorneys' fees and costs in the amount of $16,896.44, for a total amount owing of $1,285,865.50 after subtracting the distributions Staniforth has already received and is expected to received.

**IT IS SO ORDERED.**

Dated: June 2, 2023

Hon. Gonzalo P. Curiel
United States District Judge